No. 35,049

ERNEST MATLOCK, by JOE MATLOCK, His Father and Next Friend, *Appellant,* v. J. P. HOLLIS and B. P. HOLLIS, doing business as HOLLIS BROTHERS, Respondents; EMPLOYERS' LIABILITY ASSURANCE CORPORATION LIMITED, *Appellee.*

(109 P. 2d 119)

Opinion filed January 25, 1941.

*Homer V. Gooing,* of Eureka, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HOCH, J.: This is a workmen's compensation case. Claimant, an injured workman, secured a default judgment in the district court against the employer, but was denied relief from the defendant insurance company. From the latter adverse judgment he appeals.

The questions presented are whether the trial court's findings, as to the material facts, are supported by the evidence, and whether, if so supported, the court erred in its conclusion of law that the claimant had no right of recovery as against the insurance company. More specifically, the main law question is whether an employee can

recover compensation from an insurance company, for serious injury received prior to the application or issuance of an antedated compensation insurance policy, but within the term therein fixed, the fact of such injury having been fraudulently concealed by the employers when the application was made.

This case has been here before on another question. At the initial hearing before the commissioner, counsel for the insurance company made a statement which by admission became a stipulation as to certain facts, and outlined the company's contention that on account of fraudulent representations and concealment, there was no coverage. Counsel and commissioner believing that the commissioner was without jurisdiction to consider the company's equitable defense, no testimony was introduced by the company. The commissioner made an award from which the company appealed to the district court. Pending the hearing of this appeal in the district court, the insurance company instituted an independent action in equity seeking reformation or cancellation of the policy and an injunction against enforcement of the policy. Claimant, the employers, and the compensation commissioner were made defendants in the equity action, and pending the outcome of that action, the compensation proceedings were stayed in the district court. In *Employers' Liability Assurance Corp. v. Matlock,* 151 Kan. 293, 98 P. 2d 456, this court considered an appeal from an order of the district court sustaining a demurrer to the petition in the equity action and held, in an opinion filed January 27, 1940, that the jurisdiction of the compensation commissioner is complete, with a procedure that is exclusive for determining liability under the workmen's compensation act, and that incidental thereto is the power to hear and determine equitable defenses. Accordingly, the order sustaining the demurrer was affirmed on the ground that the district court had no jurisdiction to entertain the separate action in equity until the remedies provided by the compensation act were exhausted. The appeal from the award by the commissioner thereupon proceeded in the district court.

The trial court made rather extended and detailed findings of fact and conclusions of law. It will suffice to summarize the findings of fact pertinent to the issue presented. The court found:

That J. P. and B. P. Hollis were drilling an oil well in Greenwood county in October, 1937;

That Ott Hollis, their father, was personally interested with his sons in the

oil drilling business, employed help, paid bills, paid this claimant for his work on the well, gave directions to the workers, and was in fact a partner;

That in November, after the accident in October, Ott Hollis wrote to the claimant advising him he was sending him some money and would have something for him to do as soon as he could drive a truck, and that "then we will take care of the hospital bill and Doctor";

That in the forenoon of October 22, 1937, claimant received a severe injury while working on the well for Hollis brothers, B. P. Hollis being present at the time;

That in September, 1937, Mr. Corrigan, a solicitor for the Wheeler-Kelly-Hagney Company of Wichita wrote Hollis a letter asking about their compensation insurance, but received no reply at the time;

That in the afternoon of October 22, about four hours after the accident, Ott Hollis called upon Corrigan at his office in Wichita, "and representing the partnership, made application for compensation insurance with the Employers' Liability Insurance Corporation";

That the application was received by Corrigan, together with a check for about $112 in payment of the premium, and Hollis requested that the check be held until he could get back to Eureka and send a draft for it;

That a policy was thereupon issued, dated October 22, and the term fixed to begin at 12:01 a. m. of the same day—this provision of the policy being printed thereon in harmony with what appeared to be the customary practice of the company in making such policies run from 12:01 a. m. of the date of issue;

That it does not appear from the record as to what date the policy was actually issued;

That when Hollis made the application he advised the agent that "they had carried compensation for about a five-year period; that they had only had two minor accidents prior to that period of time, and that they had never had any insurance canceled";

That the statements so made to the agent were false for the reason that they had had compensation insurance previously which had been canceled and that they had had losses;

That Hollis did not disclose to the company the fact that the employee, Matlock, had beeen injured about four hours previous to the making of the application;

That the company, having discovered later upon investigation that the employee had been injured as above stated, that Hollis brothers had had compensation insurance previously which had been canceled, that they had had losses, that they were not financially reliable, returned the check and canceled the policy as of the date of issue;

That "representations made by Hollis as above were untrue and were fraudulently made for the purpose of securing said insurance, and such representations and the withholding of information of fact that an injury had already occurred to one of their employees, claimant herein, worked a fraud upon the insurance company";

That prior to the instant application "these people had carried other liability insurance," that Joe Matlock, father of the claimant, testified: "Well, of

course John Hollis, I was pretty well acquainted with Bart, I was talking to him on Wednesday, I believe, I was in Wichita when it happened, on Wednesday after it happened I was talking to Bart down at the well, and he said the boy is insured, he can draw a thousand dollars and his doctor bill, but we would just rather pay him $16 a week and his doctor bill and not cash in on his insurance, that was what Bart told me";

That "from the foregoing it is found that Hollis brothers at the time they made application for the insurance knew that the policy, if issued, would run from 12:01 a.m. of that date."

Following were the court's conclusions of law:

"1. The contract of insurance having been secured from the company through fraud perpetrated upon it by said Hollis brothers, created no protection to them or right of recovery by them, thereunder.

"2. Hollis brothers, having no rights under said policy as against the insurance company by reason of their fraud, could not create for the claimant, Ernest Matlock, a right of recovery as against the company, *which right of recovery he did not have at the time of the injury.* (Italics ours.)

"3. Claimant, Matlock, is not entitled to any relief as against the insurance company.

"4. The award of the compensation commissioner as against J. P. Hollis and B. P. Hollis, doing business as Hollis brothers, should be affirmed, and as against Employers' Liability Assurance Corporation, Limited, should be set aside and annulled."

As to the findings of fact, appellant denies that there was evidence to support the finding that Ott Hollis, who secured issuance of the policy, was a partner in Hollis brothers; that there were any material misrepresentations about previous insurance which had been canceled; that there were false statements concerning previous losses; that there was fraudulent concealment of the fact of the employee's injury; that the employers had knowledge that the policy would be effective from 12:01 a.m. on the day of the injury.

We consider it unnecessary to discuss at any length the question of whether the father, Ott Hollis, was actually a partner as found by the court. There was certainly plenty of testimony tending to show partnership, but whether or not he was a partner in Hollis brothers, he applied for the insurance in their name, answered the company's inquiries, and paid the premium. They accepted the policy which was issued in their name, thus ratifying the acts of Ott Hollis in so securing it, and it is this policy upon which claimant relies. There was ample evidence to support the court's finding that Ott Hollis acted for Hollis brothers.

It is equally unnecessary to discuss at any length the court's findings that the employers misrepresented to the company that they

had had no previous insurance which had been canceled and that they had had only two minor injuries and no losses. When the claim was first filed and came on for hearing before the compensation commissioner, counsel for appellee, when he appeared to give notice of the insurance company's contention that there was no coverage, made a statement of facts including reference to these misrepresentations as to prior losses and cancellation of insurance, and following such statement, counsel for the claimant said: "I don't question that statement at all, and see no possibility of refuting any part of it, and I am willing that that be a stipulation of the facts."

In view of the primary and controlling importance of the question of concealment by the employers of the existence of the injury theretofore suffered by their employee, we shall devote no further discussion to the fraudulent misrepresentations as to prior losses and cancellation of insurance, except to say that clearly they were of a character which would at least make the policy voidable and unenforceable as between the insured and the insurance carrier.

Before proceeding to the main question of law, we take note of appellant's contention that there was no evidence that any misrepresentations or solicitations by the appellant were responsible for antedating the policy for about fourteen hours in order to fix a term that would include the time, three hours prior to the application, when the appellant was injured. The court found that the insured knew that if the policy were issued, its term, according to the provision printed thereon, would begin several hours prior to the injury, and that it was the custom of the company to fix the term of its policies to begin at 12:01 a. m. of the date of issue. The court found that Hollis brothers had previously carried liability insurance. The court also called attention, in its findings of facts, to testimony to the effect that on the Wednesday after appellant's injury Bart Hollis—one of the brothers—stated to claimant's father that the appellant was insured, the inference being that he must have known, therefore, that the term of the policy antedated the accident. Appellant urges that the "Wednesday" testified to was five days after the accident, and that there is nothing to indicate to what "insurance" Bart Hollis was referring. As we view it, it makes little difference whether the employer specifically induced the company to antedate the policy. As the trial court pointed out, that provision was a part of the printed form of the policy; and, in any event, the employers accepted the policy with that provision in it, the term so fixed being covered by the premium which was paid.

Appellant urges further that the trial court did not specifically find that Ott Hollis knew and concealed the fact of the accident. The argument is unconvincing. The court found specifically that Ott Hollis "did not disclose to the company" the fact of the employee's injury, that he withheld "information of fact that an injury had already occurred to one of their employees," and that by doing so he "worked a fraud upon the insurance company." Obviously, Hollis could not be guilty of having "worked a fraud upon the insurance company" by *not disclosing* or by *withholding* information, if he did not have such information.

In approaching the instant issue, we bear in mind certain principles or considerations which should be noted. First; concerning the workmen's compensation act (G. S. 1935, 44-501 to 44-565). The act is founded broadly upon considerations of public policy. Its purpose is to provide protection to workmen within the limits established by the act, and particularly in hazardous employments. It follows that the necessity of effectuating the public policy which animates the act must always weigh heavily in determining doubtful issues arising under it. To this end this court is committed in many decisions, unnecessary to review, to a liberal interpretation of the act in favor of the employee. Appellant's statement, however, that employers "are required to insure and keep insured their liability under the act" is not quite accurate. Employers—within the limits of the act—are made liable to employees for compensation for personal injuries by accident in the course of their employment. (G. S. 1935, 44-501.) In order to fortify this liability, such employers are required either to insure the payment of compensation fixed by the act in an approved insurance company, or "by showing to the commission that said employer carries his own risk and is what is known as a self-insurer and by furnishing proof to the commission of his or its financial ability to pay such compensation for himself or it" (G. S. 1935, 44-532). While the act provides penalties to employers and insurance companies for violation of certain provisions, it cannot be said that the state is a guarantor of the protection which the act contemplates. If an employer has not taken out compensation insurance and if he proves not to be financially responsible—whether or not he has made the showing to qualify as a self-insurer—the law provides no civil recourse to the employee other than his right of action against the employer. In other words, the employee may assume that such protection as the compensation

act calls for has been provided by the employer, but if he enters the employment without assuring himself that insurance is carried, or that the employer is financially responsible as a self-insurer, the law itself provides no further method of securing compensation in case of injury.

Further, as to the act: Under its terms the obligation of the insurance carrier is direct to the employee, who, as well as the employer, may enforce, in appropriate action, any rights granted under the act (G. S. 1935, 44-559). The instant policy, in explicit terms, embodies the statutory requirement of direct obligation to the injured employee. We shall presently consider the applicability, if any, of this direct contractual liability to the employee under the facts in this case.

Appellant's principal contentions may be summarized as follows: The purpose of the workmen's compensation act is to afford protection to employees in furtherance of a broad and sound public policy; the appellant had a right to assume that such protection had been provided by his employer; the appellee was under no obligation to issue a policy to the employer; but having voluntarily assumed the risk, it must fulfill the terms of the policy unless the policy is regularly canceled after proper notice; the insurer voluntarily antedated the policy to 12:01 a. m. of the day when the application was made, and accepted a premium to cover a term beginning at that time; it is entirely lawful to antedate insurance policies and liability is thereby assumed for all injuries during the term, including those occurring prior to the application or issuance of the policy; even though the policy may be unenforceable by the employer and may be subject to cancellation by the insurer on account of the employer's fraud or misrepresentation, the employee may recover from the insurer in the absence of fraud on his own part.

While the propriety of permitting the antedating of insurance policies may be debatable, the legality of the practice is well established, provided, of course, that good faith on both sides is present. Parties to the contract have a right to agree on the beginning as well as the ending of the term covered by the policy. We have found no authority, however, either textbook writer or decided case, where the validity of such a contract is not dependent upon an uncertain and unknown loss. There must be mutuality of risk. There must be no knowledge by either party, undisclosed to the other, at the time the contract is made which destroys the uncertainty of loss as far as he

is concerned. This proposition will presently receive further attention.

It is not questioned that insurance policies, being contracts, are subject to the same essential requirements as pertain to contracts generally—meeting of the minds, mutuality, consideration, etc. In insurance contracts "a risk or contingency insured against" is an indispensable factor. Without it the very basis of an insurance contract is absent. (32 C. J. 1095.) This contingency, or uncertain event, is in the nature of a condition precedent. "A breach of condition precedent renders the policy void at its inception, so that it never attaches" (3 Cooley's Briefs on Insurance, 2d ed., 1918).

The distinction between a fraudulent concealment of a loss already suffered, in order to secure insurance coverage of such loss, and fraudulent representations as to other matters which might or might not have led the insurance carrier to refuse the risk, is apparent. If A applies for fire insurance upon a building and fraudulently represents that he has had no fire losses, the policy may be voidable and subject to cancellation by the insurer upon discovery that the insured had had losses under circumstances making the new risk undesirable. But if he applies for insurance knowing that the building has already been destroyed by fire, conceals the fact of the prior loss and secures a policy antedated to cover the time of the loss, the policy is void and no liability ever attaches. It is void because there is no uncertain event, no contingency or risk mutual in character which is the basic factor in insurance contracts. The principle is akin to the rule that "if no insurable interest exists, the contract is void" (29 Am. Jur. 289.) There are many cases where antedated fire insurance policies have been upheld where the property insured had been destroyed prior to the application, but the loss was unknown to the insured. The uncertainty was equally present in the minds of both parties. The premium was paid and the liability assumed for the agreed purpose of covering the uncertainty. This class of policy has been especially common in marine insurance providing protection "lost or not lost" of vessels which have previously sailed. But concealment of a known loss obviously destroys the very basis upon which such antedated policy rests. To put it another way: While insurance contracts are not technically wagering contracts, an applicant for insurance stakes his premium payment on the chance that there will be a loss. By the same token, the insurance carrier takes a chance—the heavy odds being represented by the face of the

policy as against the premium—that there will be no loss. But if the applicant knows his house has already burned down, he is taking no chance, and the policy is not merely voidable, but is void. The implied condition, requisite to the contract, is absent.

The principle just stated is applicable to fire, life, compensation, or any other sort of insurance. If the employer conceals the fact of an injury to an employee which would be covered by an antedated policy which he accepts, he is taking no chance—the contingency, the risk is not mutual. He is seeking indemnity under a contract predicated on an uncertain event, when as to him the event has ceased to be uncertain. We have found no authority which would make such a contract merely voidable. It is void *ab initio*.

The principles just stated are not only supported by the authorities cited by appellee, and by others found in our own research—hereinafter cited—but the distinctions emphasized are likewise recognized in the cases cited by appellant. In his original brief the appellant relied mainly upon *Matter of Aioss v. Sardo*, 223 App. Div. 201; 227 N. Y. S. 708, which he stated was the only case squarely on the point which he had found. But that case involved no injury received prior to the application, no concealment of a loss which had already taken place. There was an untrue representation that "no similar insurance has been canceled by any insurance carrier during the past year." Such a fraudulent representation is clearly of the class which may make a policy voidable. Had the company not been misled as to cancellation of prior insurance, it might not have assumed the risk; but there was none the less a risk of future loss to be assumed. There was a contingency mutually existing. The case only holds that until cancellation, there was a direct obligation to the employee which he might enforce.

In his reply brief appellant relies upon *Points v. Wills*, 44 N. Mex. 31, 97 P. 2d 374, which comes nearer to the case at bar than the Aioss case. But it has a fundamental difference. The applicant had filled out and mailed the application, together with a check for the premium before the injury occurred. There was an existing contingency, an uncertain event, a mutual risk at the time the application was made and the applicant parted with his money.

The cases cited by appellant involving the standard or "union" form of mortgage clauses frequently contained in fire and other property insurance policies are entirely in harmony with the principles and distinctions hereinbefore stated. They hold that there

is a direct liability to the mortgagee regardless of fraudulent representations by the insured which would make the policy voidable. But we find no mortgage clause case in which the mortgagee was permitted to recover under a policy void at its inception on account of fraudulent concealment of basic facts essential to the very making of a contract.

In *Continental Casualty Co. v. Lanzisero*, 119 N. J. Eq. 166, 181 Atl. 170, it is true, as pointed out by appellant, the compulsory automobile policy did not provide for direct liability to third persons and therefore, to that extent is not in point here. But appellant himself calls attention to a statement in the opinion which does have significance, wherein it was said: "but Lanzisero was not *then* insured. *He held no policy when the loss or damage occurred to which the injured persons could look for indemnity*" (italics ours). That is precisely the situation here. When the injury occurred no policy had been issued and none even applied for to which he could look for relief.

In *Commercial Insurance Co. v. Hallock*, 27 N. J. L. 645, 72 Am. Dec. 379, recovery was permitted for a prior property loss under an antedated fire insurance policy, but in that case "there is no allegation of fraud or concealment." It was stated that the company would be bound "if there is no fraud or concealment by the party insured" of the prior loss.

In *Continental Cas. Co. v. Ind. Com.*, 61 Utah 16, 210 Pac. 127, cited by appellant, the application had been filled out, check for the premium enclosed in good faith with the application prior to the accident, and mailed before the applicant learned of the accident. Recovery was permitted, the court saying: *"if the policy was obtained by fraud* or if a mistake was made in fixing the date when the same should become effective, the Industrial Commission is not the tribunal to grant the plaintiff relief" (italics ours).

In *Wales v. New York Bowery Fire Ins. Co.*, 37 Minn. 106, 33 N. W. 322, it was said that where the claimant under the policy knew the property had been destroyed but concealed that fact from the insurer, "the policy is void."

In Porter's Laws of Insurance, 6th ed., 7, "A policy . . . *can equally not attach after the risk is determined one way or other*, except in those special insurances when *both parties*, being equally ignorant of the position of the thing insured, contract to insure it lost or not lost." (Italics ours.)

In 5 Williston on Contracts (Rev. ed.) 4154-4155: "Fraud may induce a person to assent to do something which he would not otherwise have done, or it may induce him to believe that the act which he does is something other than it actually is. In the first case the act of the defrauded person is operative though voidable; in the second case the act of the defrauded person is *void*." (Italics ours.)

In *Union Central Life Ins. Co. v. Zehr*, 143 Kan. 910, 57 P. 2d 51, the bylaws of a fire insurance company provided that their policy would be void if the property was encumbered when the policy was issued. The mortgagee was permitted to recover in spite of the fact that there was a second mortgage. But there was no fraud or concealment by the insured and the recovery was permitted because it was *"through fault of the agent of the company* the application for the policy failed to disclose" the encumbrance (italics ours). Estoppel was there applicable. Moreover, there was property to be insured, there was still a risk, a basis for contract.

It would unduly prolong this opinion to discuss individual cases further. In further support of the principles and distinctions here stated, see: *Nippolt v. Firemen's Ins. Co.*, 57 Minn. 275, 59 N. W. 191; *Matter of Nick Orto*, 245 App. Div. 782, 281 N. Y. S. 16, 271 N. Y. 551; *Security Fire Ins. Co. of New York v. The Kentucky Marine & Fire Ins. Co.*, 7 Bush [Ky.] 81, 3 Am. Rep. 301; *Mead v. Phenix Insurance Co.*, 158 Mass. 124, 32 N. E. 945; 1 Cooley's Briefs on Insurance, 114-115; Kerr on Fraud and Mistake, 5th ed., 101 *et seq.;* 14 R. C. L., 878, § 52; 32 C. J. 1109, § 202.

It is obvious that the principle of estoppel, which has been suggested, cannot here be invoked to bind the insurance company. It voluntarily antedated the policy and accepted the risk of possible injuries, unknown to either party, which might have occurred within the antedated period. But it would be preposterous to assume that it voluntarily took on liability for a serious injury known to the employers, and the appellee is not charged with any act or conduct which misled the employers.

It has been suggested that if the instant injury had not occurred, and exactly one year later at eleven o'clock in the forenoon of October 22, 1938, an injury had happened, the company would probably then be contending that the term of a year began at 12:01 a. m. on October 22, 1937, and that therefore, the coverage had terminated. And why not? As hereinbefore noted, the legality of antedating policies to cover possible losses, unknown to have occurred when the policy is issued, is generally recognized. (See *Matter of Nick Orto*,

supra; *Commercial Insurance Co. v. Hallock*, supra; *Points v. Wills*, supra; *Security Fire Ins. Co. v. The Kentucky Marine & Fire Ins. Co.*, supra. If there had been no concealment of prior loss or other fraudulent representation, the policy would have been valid and would normally expire at 12:01 a. m. October 22, 1938.

The serious character of appellant's injury, as claimed by appellant and conceded by appellee, brought an award of $1,586.80, including compensation and medical expense. A final judgment for that amount now stands as against the employers. Having knowledge of such a serious injury, they sought to cover it by paying a premium of $112. Nor can it be said that the benefits go solely to the employee, and therefore, the employers had no financial interest in the policy's protection. They are liable to the employee under the judgment, and it is for this liability that the policy, if valid, would indemnify them.

The conclusion is inescapable that the concealment of the injury went to the very heart of the contract, made it void at its inception, and no one can predicate any rights upon it. Under such facts, "public policy" as well as elementary principles of law, support the finding of the trial court that "Hollis brothers, *having no rights* under said policy as against the insurance company by reason of their fraud, could not create for the claimant, Ernest Matlock, a right of recovery as against the company, *which right of recovery he did not have at the time of the injury.*" (Italics ours.) And it must be equally clear that the fact that under the contract, if valid, or perhaps if voidable only and uncanceled at the time of injury, the employee would have a direct right of action against the insurance company, cannot prevail to give a right of action under a contract void at its inception. The argument urged by appellee that refusal to validate the policy takes from the employee no rights, no relief, to which he was entitled when the accident occurred is wholly in harmony with what has already been said. It is in fact implicit in the legal principles we have discussed. He is not deprived of any rights, actual, apparent or potential, then existing. Had the policy been merely voidable through fraudulent representations not affecting the very existence of a risk, a different question would be presented.

The conclusion already stated makes it unnecessary to consider other contentions discussed in the excellent briefs presented by both parties.

No error is found. The judgment is affirmed.