**COMMERCIAL STANDARD INSUR-
ANCE COMPANY, a corpora-
tion, Appellant,**

v.

**FARMERS ALLIANCE MUTUAL IN-
SURANCE COMPANY, a corporation,
Francis J. Gallagher and Eunice W. Gal-
lagher, his wife, Jennie Rowley, mother
and next friend of Glen Rowley, a mi-
nor, and Theda Hester, Appellees.**

No. 9294.

United States Court of Appeals
Tenth Circuit.

Nov. 7, 1967.

Vance Mauney, of Botts, Botts & Mauney, Albuquerque, N. M., for appellant.

Denis Cowper, of Chavez & Cowper, Belin, N. M., for appellees Jennie Rowley and Theda Hester, and H. L. Cushing, Albuquerque, N. M. (Richard C. Civerolo, Albuquerque, N. M., with him on the brief), for appellee Farmers Alliance Mutual Insurance Co.

Before WILBUR K. MILLER, Senior Circuit Judge,* and BREITENSTEIN and SETH, Circuit Judges.

WILBUR K. MILLER, Senior Circuit Judge:

This litigation was precipitated by a dog bite. In the main, it is a contest between two insurance companies, each denying liability for the damage done by the dog, and each asserting the other is liable therefor. One company contends its policy had been cancelled by the insured prior to the dog bite incident and so was not then in effect, and the other claims its policy was void *ad initio* because it was obtained by fraudulent misrepresentation on the part of the insured.

We summarize the salient facts. On April 17, 1966, a dog owned by Francis J. Gallagher and his wife, Eunice W. Gallagher, bit and thereby injured Glen Rowley, a minor, who was then on the Gallagher premises. In less than a month—

---

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

the exact date does not appear in the record—Jennie Rowley, mother and next friend of the dog's victim, and one Theda Hester [1] sued the Gallaghers in a New Mexico state court to recover damages for the injury sustained by Glen Rowley.

On February 8, 1963, the appellant, Commercial Standard Insurance Company, had issued to the Gallaghers its policy insuring them for a period of five years, subject to annual payments of premium, against liability on claims such as that of the Rowley boy, as well as against other risks. The premium for the year beginning February 8, 1966, was paid for the Gallaghers by the Burnett Insurance Agency, a licensed agent for Commercial Standard. Some time prior to May 17, 1966—the exact date is not shown of record—the Gallaghers demanded that Commercial Standard defend them in the Rowley suit and pay, to the limit of the policy's coverage, any damages which might be adjudged against them therein. Commercial Standard refused to defend the Gallaghers in the damage suit and denied liability on the theory that at their request the policy had been cancelled prior to the dog bite.

The claim of cancellation was based on the fact that on March 15, 1966, in a conversation with Mrs. Burnett, Gallagher agreed to repay her agency so much of the premium advanced by it as would keep the policy alive until April 1, saying that at that time he intended to obtain other insurance. Mrs. Burnett telephoned Commercial Standard to learn the dollar amount necessary to continue the policy until April 1, which sum Gallagher repaid to her. In the conversation, Mrs. Burnett advised Commercial Standard that Gallagher intended to cancel as of April 1, but did not instruct the Company to cancel nor formally request a cancellation.

The policy, which insured against fire and public liability, was in the possession of a building and loan association which held a mortgage on the Gallagher home. On April 1, and at times thereafter Mrs. Burnett called the building and loan association and learned that Gallagher had not obtained a policy to replace the Commercial Standard policy. Finally, on April 19, Mrs. Burnett requested the company to issue a notice of cancellation for non-payment of premium, and on that day a 10-day notice of cancellation was sent by Commercial Standard to the Gallaghers and the building and loan association. On April 20 Gallagher advised Mrs. Burnett that there might be a claim under the Commercial Standard policy because of the dog bite incident.

Meanwhile, on April 18, Gallagher consulted with the agent of Farmers Alliance Mutual Insurance Company about obtaining a policy to replace the Commercial Standard policy. He told the agent he had been trying to cancel the Commercial Standard policy but was not sure whether he had done so. In answer to specific questions, Gallagher assured the Farmers Alliance agent that he had had no losses and there were no claims pending against him. On April 19, a Farmers Alliance policy was issued, but was antedated by the agent to April 14 because he surmised that Commercial Standard had sent a 10-day notice of cancellation on or about April 1; [2] and on April 21 Gallagher obtained possession of the policy by paying the premium thereon.

With the situation as thus described, Commercial Standard on May 17, 1966, sued Farmers Alliance, the Gallaghers, Jennie Rowley as next friend of Glen Rowley, and Theda Hester in the United States District Court for the District of New Mexico, seeking a declaration of rights. Except for a few discrepancies,[3]

1. The record does not show why Theda Hester was a plaintiff in the damage suit. It may be that she was bitten also.

2. The Farmers Alliance policy was sent to the building and loan association which then sent the original Commercial Standard policy to that company with a note to

cancel as of April 14, the date of the Farmers Alliance policy. Thereupon, Commercial Standard purported to cancel the policy as of April 14. Exactly what it did does not appear.

3. For example, Commercial Standard alleged that Farmers Alliance issued its

it set forth the facts substantially as we have outlined them. It prayed the District Court to declare that it "is under no duty or obligation to appear and defend said suit [the Rowley damage suit] on behalf of Defendants Gallagher, or to assume any liability under any Judgment rendered [therein] * * * and that this Court declare that the defense of the Defendants Gallagher in said cause is the obligation of Defendant, Farmers Alliance Mutual Insurance Company, and that said Company is obligated to pay any judgment rendered * * * against said Defendants Gallagher, arising out of the Cause * * * pending against them * * *."

The Gallaghers answered that they had received from Commercial Standard a notice dated April 19 that the policy would be cancelled as of 12:01 a. m. April 30, 1966; and that Commercial Standard's agent had told them on February 15 and April 20 that the policy would be cancelled when it was delivered to the Company for that purpose. Farmers Alliance's answer affirmatively pleaded that its policy, issued April 19, was obtained by the fraudulent and willful misrepresentation of the Gallaghers that there were no claims pending against them; its prayer was that its policy be declared a nullity, and that the court further declare it to be the duty of Commercial Standard to defend the Rowley suit and to pay any judgment awarded therein against the Gallaghers. Understandably, Jennie Rowley and Theda Hester prayed the court to declare that both insurance companies would be liable to pay any judgment recovered by them.

After a full evidentiary hearing, the District Judge filed an opinion in which he found the facts to be as we have stated them. With respect to whether the Farmers Alliance policy was in effect on

April 17, the trial judge reached the following conclusion of law:

"The Court can only conclude that as of April 21 when the Farmers Alliance policy was obtained Gallagher knew of the pending claim and fraudulently concealed it from Farmers Alliance. Under these circumstances that policy was void ab initio. Matlock v. Hollis, [153 Kan. 227], 109 P.2 119 [132 A.L.R. 1316], cf. Points v. Wills, 44 N.M. 31, 97 P.2 374."

With respect to the issue as to whether the Commercial Standard policy was in effect on April 17, the court made the following findings of fact:

"The Commercial Standard policy was issued February 8, 1963, for a period of five years with the premiums renewable annually. The premium for the year commencing February 8, 1966, was paid by the Burnett Insurance Agency. Mrs. Burnett was a licensed agent for Commercial Standard, but was acting as the agent for Gallagher in paying the renewal premium.[4]

"On approximately March 15, 1966, Mrs. Burnett had a conversation with Gallagher and he agreed to repay the amount of the premium for a period of two months, or until April 1, 1966. He advised her that at that time he intended to obtain other insurance.

"Mrs. Burnett called the Commercial Standard office and obtained the dollar amount for a two months period, and Gallagher repaid this amount to the Burnetts.

"At that time Mrs. Burnett advised the Commercial Standard office that *Gallagher had the intention of cancelling as of April 1st.* She did not instruct them to cancel the policy or formally request a cancellation. * *"
(Our emphasis.)

policy on April 14. In fact, the Farmers Alliance policy was issued April 19 and antedated to April 14. It also alleged that Gallagher had requested cancellation of

his Commercial Standard policy on April 14; this is not supported by the record.

4. This was, of course, a conclusion of law.

and reached the following conclusions of law:

"* * * Mrs. Burnett * * * was acting as agent for Gallagher in paying the renewal premium.

* * * * * *

"The Commercial Standard policy was in force and effect on April 17. The Burnetts were actually the agents of the Gallaghers, and the conversations between them in March did not rise to a notice of cancellation sufficient to terminate the policy. At the most those conversations amounted to an understanding that the policy would be cancelled upon the obtaining by Gallagher of a replacement policy. That did not occur prior to April 19, and on that date the first effective step toward cancellation was taken."

Commercial Standard appeals.

▇▇▇ While Mrs. Burnett may well have been the agent of the Gallaghers in paying for them the renewal premium on the Commercial Standard policy on February 8, we hold the District Court erred in holding she was the Gallaghers' agent in her conversation March 15 with Commercial Standard's office about cancellation. Section 58–5–28, New Mexico Statutes Annotated, 1953 Compilation, provides:

"Any person licensed as an agent to represent an insurance company shall, in any controversy between the insured or his beneficiary and the company, be held to be the agent of the company issuing the insurance solicited or ap-

plied for, anything in the application or the policy to the contrary notwithstanding; * * *"

Gallagher had the contractual right to request that the Commercial Standard policy be cancelled at any time.[5] No action on the part of the insurance company was necessary to implement the request and consummate cancellation. If and when an insurance company receives an unequivocal request that a policy containing a provision such as that shown in the margin be cancelled, the policy is effectively cancelled as of the date requested; neither the consent of or action by the insurer is necessary. Palardy v. Canadian Universal Ins. Co., 360 F.2d 1007 (2nd Cir. 1966); Vaughn v. Great American Ins. Co., 390 S.W.2d 622 (Mo.Ct.App.1965); DeLaPerriere v. American Home Assurance Ins. Co., supra; State Farm Mut. Auto. Ins. Co. v. Miller, 194 Va. 589, 74 S.E.2d 145 (1953); Camden Fire Ins. Ass'n v. Jennings, 93 S.W.2d 530 (Tex. Civ.App.1936).

▇▇▇ We must ascertain, therefore, whether Gallagher's conversation with Mrs. Burnett on March 15 evinced a clear and unequivocal present intent to cancel as of April 1, and whether that intent, if there was such, was communicated to Commercial Standard. As to the substance of the conversation, the trial court found as a fact that

"Gallagher * * * agreed to repay [to Mrs. Burnett, who had advanced a full year's premium for him] the amount of the premium for a period of two months, or until April 1, 1966.

---

5. The policy contained this provision:
   "This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. * * *"
   With respect to this provision, we agree with the following interpretation of similar language contained in DeLaPerriere v. American Home Assurance Ins. Co., 106 Ga.App. 516, 127 S.E.2d 478, 480 (1962):
   "* * * The language of this policy does not require a surrender of the

policy to effect a termination, but does provide that where the insured elects to terminate the contract 'this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time.' In such a case "where a notice to cancel a policy is given in accordance with its terms, the contract is ipso facto terminated, and the obligation of the insurance company to return the unearned premium, if any, to the insured merely creates the relationship of debtor and creditor between the company and the insured with respect to that item.' [Cases cited.]"

He advised her that at that time he intended to obtain other insurance."

This, we think, was a clear and unequivocal declaration by Gallagher that he wanted the policy cancelled as of April 1. This is emphasized by the fact that he repaid to Mrs. Burnett so much of the premium advanced by her as would keep the policy in effect to April 1, and that he would not and did not repay any part of the annual premium beyond April 1. Gallagher could hardly have been more explicit about his intention to cancel.

The question then is whether this intention was communicated to Commercial Standard. In requesting Mrs. Burnett to cancel as of April 1, he was talking to her in her capacity as agent for the insurance company—not as his agent who had advanced the annual premium for him—because he was trying to tell the company that he intended to cancel. But whether so or not is immaterial, because the court found: "At that time Mrs. Burnett advised the Commercial Standard office that Gallagher had the intention of cancelling as of April 1st." Thus, no matter whose agent Mrs. Burnett was in giving this information to the Company, Commercial Standard then learned of Gallagher's clear and unequivocal intention to cancel. This was enough to accomplish the cancellation as of April 1.

To be sure, the court found that, in her conversation with the Company's office, "She did not instruct them [*sic*] to cancel the policy or formally request a cancellation." But neither of these acts was required to effect the cancellation which was complete when the Company was told of Gallagher's intention. As we have said, no action by the Company was necessary to make the cancellation effective.

In these circumstances, we hold the trial court erred in concluding as a matter of law that "the conversations between them [Gallagher and Mrs. Burnett] in March did not rise to a notice of cancellation sufficient to terminate the policy," and in holding the Commercial Standard policy was in force and effect on April 17.

It might be suggested that Commercial Standard's notice of cancellation given April 19 was inconsistent with its theory that Gallagher cancelled the policy as of April 1; and so it was. But the inconsistency did not revivify the cancelled policy—cancellation as of April 1 was a *fait accompli* regardless of how Commercial Standard viewed the matter—unless it can be said the Company was thereby estopped to claim the earlier cancellation date. The 10-day notice of April 19 did not cause Gallagher to change his position to his prejudice. He was already weaving a tangled web: he had fraudulently induced Farmers Alliance to issue a new policy dated back to April 14. But he must have feared his deceit would be discovered; so when he received Commercial Standard's notice of cancellation, he changed his position, not to his prejudice but to what he thought was his advantage: he demanded protection from Commercial Standard under the policy he had cancelled as of April 1. Doubtless this seemed to him safer than to rely on the policy he had fraudulently obtained from Farmers Alliance. Courts are not inclined to aid such double-dealing.

The trial court's holding that the Farmers Alliance policy was void *ab initio* because of Gallagher's fraudulent concealment of the Rowley dog bite claim seems to us to be clearly correct and is affirmed. But, as we hold the Commercial Standard policy was cancelled by Gallagher as of April 1, and consequently was not in effect when the dog bit the Rowley boy, the trial court's declaration to the contrary is reversed, and the case is remanded for the entry of a judgment in accordance with this opinion.

Affirmed in part and reversed in part.