**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Plaintiff-Appellant,**

v.

**Alfred E. BOCKHORST et al., Defendant-Appellee.**

**No. 712–70.**

United States Court of Appeals, Tenth Circuit.

Jan. 14, 1972.

Thomas C. Kelley, Great Bend, Kan. (Lee Turner, Lawrence E. Condit and Dean, Turner & Balloun, Great Bend, Kan., on the brief), for plaintiff-appellant.

Thomas A. Wood, Wichita, Kan., for defendant-appellee.

Before MURRAH, BREITENSTEIN and HOLLOWAY, Circuit Judges.

MURRAH, Circuit Judge.

State Farm Mutual Automobile Insurance Company, a corporation with its principal place of business in Illinois, brought this diversity action for declaratory judgment of nonliability on a policy of automobile insurance which it had issued to Alfred E. Bockhorst, a Kansas resident. The complaint alleged that a third party defendant was asserting a claim in excess of $10,000, arising out of an automobile accident for which the company would be liable if the policy was in force at the time of the accident. Bockhorst answered and counterclaimed, alleging that the policy was in force at the time he was involved in the accident and covered his collision damages and the asserted liability. A justiciable controversy is thus asserted, and the requisite jurisdictional facts are conceded. This appeal is from a judgment in favor of Bockhorst which we think must be affirmed.

The events leading to this controversy are clearly set forth in the trial court's unchallenged oral findings of fact. The policy in question was originally issued to Bockhorst in December, 1968, through Richard E. Dame, State Farm's local agent in Stafford, Kansas. The policy remained in force until August 24, 1969, when it lapsed as a result of Bockhorst's failure to pay premiums due. At approximately 12:45 a. m. on the Saturday morning of October 4, 1969, Bockhorst was involved in an accident resulting in the death of a pedestrian. Later that same morning he wrote a check payable to State Farm in an amount sufficient to pay a six-months premium on the policy and mailed the check to Dame. Bockhorst then went to see Dame, told him of the accident, and asked if he had received the check. At approximately 1:00 p. m. on the afternoon of October 4, agent Dame went to the local Post Office where he found Bockhorst's letter requesting reinstatement of the policy, together with State Farm's notice that the premium was due and the check in payment of the premium. Dame advised Bockhorst that he was uncertain whether State Farm would reinstate the policy, but he immediately mailed the check and the notice to State Farm's regional office at Columbia, Missouri. He did not, however, include any information concerning the fact that an accident had occurred before he received Bockhorst's payment, or the exact time at which he received the payment.

On the following Monday, Dame notified the State Farm adjuster for his area of Bockhorst's accident and the circumstances of the premium payment. That same day, after investigating the accident, the adjuster advised Dame that he had serious doubts as to whether Bockhorst was covered. Also on that same day the adjuster phoned State Farm's claims superintendent at the Columbia office advising him of the situation and his doubts concerning coverage. The claims superintendent stated that he did not think Bockhorst would be covered. He also informed the superintendent of State Farm's policy service division—the division to which Dame had mailed Bockhorst's check—that there was a question concerning Bockhorst's coverage.

While the claims division was conducting its investigation Bockhorst's check was received by the policy service division and computerized in accordance

with normal business practices. The computer, having no input of facts concerning the accident or the specific time of payment of the premium, automatically issued a notice reinstating Bockhorst's policy of insurance effective, retroactively, as of 12:01 a. m., October 4, 1969. The policy reinstatement was mailed to Bockhorst on October 10, 1969.

One month and eight days later State Farm finally notified Bockhorst that the reinstated policy could not become effective until the time when the company actually received his premium payment through its agent, Dame; that is, at approximately 1:00 p. m. on October 4, some twelve hours after Bockhorst's accident. State Farm subsequently refunded Bockhorst's premiums stating that no coverage was available to him. The trial court took the view that by issuing the retroactively reinstated policy on October 10, after being informed of all the facts, State Farm voluntarily and intentionally waived its right not to renew the insurance contract with Bockhorst and agreed to extend coverage for the period of time when the accident occurred.

On appeal State Farm claims that the reinstated policy was void *ab initio* since the occurrence of the contingency insured against was known to Bockhorst when he requested reinstatement and paid his premium. It is also argued that the reinstatement of Bockhorst's policy resulted from the unyielding and unimaginative processes of a computer; hence, State Farm never actually relinquished a known right when in possession of all the facts so as to work a waiver.

State Farm relies primarily on the case of Matlock v. Hollis, 153 Kan. 227, 109 P.2d 119 (1941), in support of its claim that the policy was void at its inception since Bockhorst knew of the accident when he paid his premium. We think, however, *Matlock* and the other cases cited by State Farm involve situations in which the insured not only knew of the occurrence of a prior loss, but fraudulently concealed that information from the insurer until after the policy was issued. In the language of *Matlock*: ". . . [T]he concealment of the injury went to the very heart of the contract, made it void at its inception, and no one can predicate any rights upon it." 109 P.2d at 126.

Bockhorst did not conceal any facts concerning his accident from State Farm or any of its agents. Nor was there any evidence of collusion between the company's local agent and the insured which, as a matter of policy, might very well void the contract *ab initio*. See e. g., Schneider v. Washington National Insurance Co., 200 Kan. 380, 437 P.2d 798, 809 (1968). Indeed, the trial court specifically absolved all the parties of any fraud in connection with this case. We are not aware of any rule of contract law or any prevailing concept of public policy which would prevent State Farm from electing to waive its right to refuse renewal of the policy and, with knowledge of an intervening loss, accept a premium tendered for the purpose of reinstating the policy to cover that loss. Although there are apparently no Kansas cases on this precise point, the validity and binding effect of such a waiver has been upheld in several jurisdictions.[1] Having been made aware of the critical facts when it executed the contract and accepted the premium, State Farm cannot now defend on the ground that the policy was void at its inception. See Stanley v. Belt Automo-

1. See e. g., Van Hulle v. State Farm Mutual Automobile Ins. Co., 44 Ill.2d 227, 254 N.E.2d 457 (1969); American Nat. Ins. Co. v. Cooper, 169 Colo. 420, 458 P.2d 257 (1969); Alabama Farm Bureau Mutual Cas. Ins. Co. v. Hicks, 272 Ala. 574, 133 So.2d 221 (1961); Seavey v. Erickson, 244 Minn. 232, 69 N.W.2d 889 (1955); Farm Bureau Mut. Auto.

Ins. Co. v. Bobo, 214 F.2d 575 (4th Cir. 1954); M.F.A. Mutual Ins. Co. v. Quinn, 259 S.W.2d 854 (Mo.App.1953); Prudential Ins. Co. of America v. Bidwell, 103 Ind.App. 386, 8 N.E.2d 123 (1937); Johnston v. Phelps County Farmers' Mutual Ins. Co., 63 Neb. 21, 88 N.W. 142 (1901).

bile Indemnity Ass'n, 112 Kan. 412, 210 P. 1096, 1098 (1922).

■ We also reject State Farm's argument that its actions in this case did not, in fact, establish the requisite elements of a valid waiver. Kansas adheres to the traditional rule that a waiver occurs only when a party in full possession of the facts intentionally relinquishes a known right. Schneider v. Washington National Ins. Co., supra, 437 P.2d at 813; Marett v. World Fire & Marine Ins. Co., 160 Kan. 125, 160 P. 2d 664, 672 (1945). Testimony at trial indicated that the division of the company in charge of processing and issuing the reinstated policy did not obtain knowledge of the accident until after Bockhorst's premium payment had been programmed into the computer and could not be removed. State Farm contends that issuance of the reinstated policy was, thus, accomplished without knowledge of all the facts and that, in any event, it was the unavoidable result of the inexorable processes of a computer rather than the intentional relinquishment of a known right.

The trial court's findings of fact leave no doubt that State Farm was in full possession of all relevant information concerning Bockhorst's accident before the notice of reinstatement was actually issued. While there may be some question in Kansas as to whether the knowledge of a local agent such as Dame is sufficient, without more, to impute such knowledge to the insurer,[2] this poses no problem in the present case since several additional officers and employees, with responsibilities greater than those of a local agent, were fully aware of the facts concerning Bockhorst's accident by October 6. The area claims adjuster investigated the accident and communicated his findings to the superintendent of the claims division at the company's regional headquarters. Though both of

these employees expressed doubt as to coverage, the record does not reveal that they ever actually repudiated it or advised Bockhorst that he definitely was not covered before November 18, 1969.

The fact that the company's policy servicing division may not have had knowledge of the accident until after Bockhorst's premium payment was placed in the computer is not controlling. One hand of the company must be charged with what the other hand knows and does. "Knowledge which is sufficient to lead a prudent person to inquire about the matter, when it could have been ascertained conveniently, constitutes notice of whatever the inquiry would have disclosed, and will be regarded as knowledge of the facts." Columbian Nat. Life Ins. Co. v. Rodgers, 116 F.2d 705, 707 (10th Cir. 1940), cert. denied, 313 U.S. 561, 61 S. Ct. 838, 85 L.Ed. 1521. And see Stanley v. Belt Automobile Indemnity Ass'n, 112 Kan. 412, 210 P. 1096, 1098 (1922); Union Ins. Exchange, Inc. v. Gaul, 393 F.2d 151, 154 (7th Cir. 1968).

■ We also think it clear that, by its act of issuing the reinstated policy to Bockhorst, State Farm intentionally relinquished its right to refuse to extend coverage for a prior loss. The computerized reinstatement of the policy was not unavoidable as State Farm alleges. It is conceded that Bockhorst's premium payment would never have been placed in the computer if agent Dame had included information concerning the accident when he mailed the payment to the company. It is also conceded that if Dame had stated the exact time at which he received the payment the policy would have been reinstated as of that time, rather than 12:01 a. m. In these circumstances the insured should not be charged with the failure to input this critical data.

Holding a company responsible for the actions of its computer does not

---

2. See Eikelberger v. Insurance Co. of North America, 105 Kan. 675, 189 P. 139, 141 (1919), aff'd on rehearing, 107 Kan. 9, 190 P. 611; Pettijohn v. St. Paul Fire & Marine Ins. Co., 100 Kan. 482, 164 P. 1096, 1097 (1917); and cf. Bussell v. Mennonite Mut. Fire Ins. Co., 137 Kan. 542, 21 P.2d 308 (1933).

exhibit a distaste for modern business practices as State Farm asserts. A computer operates only in accordance with the information and directions supplied by its human programmers. If the computer does not think like a man, it is man's fault. The reinstatement of Bockhorst's policy was the direct result of the errors and oversights of State Farm's human agents and employees. The fact that the actual processing of the policy was carried out by an unimaginative mechanical device can have no effect on the company's responsibilities for those errors and oversights. State Farm's reinstatement of Bockhorst's policy while in full possession of information establishing its right to refuse reinstatement constituted a binding waiver, and the reinstated policy effectively extended coverage for the period during which Bockhorst's accident occurred. The judgment is affirmed.