No. 65,423

THOMAS ROBERT VARGAS, formerly d/b/a ROBERT'S BODY SHOP AND SALES, and PEOPLES NATIONAL BANK, *Appellants*, v. NAUTILUS INSURANCE COMPANY, a foreign corporation, CHRIS-LEEF GENERAL AGENCY, and BUD HAMM INSURANCE & REAL ESTATE, INC., *Appellees*.

(811 P.2d 868)

Opinion filed May 24, 1991.

*Rex A. Sharp*, of Liberal, argued the cause and was on the briefs for appellant Vargas.

*Richard R. Yoxall*, of Yoxall, Antrim & Yoxall, of Liberal, argued the cause and was on the brief for appellant Peoples National Bank.

*William J. Gotfredson*, of Knipmeyer, McCann, Smith, Manz & Gotfredson, of Kansas City, Missouri, argued the cause, and *Michael T. Halloran*, of the same firm, was with him on the brief for appellee Nautilus Insurance Company.

*Steven G. Piland*, of Field, Gentry, Benjamin & Robertson, P.C., of Overland Park, argued the cause, and *Lee M. Baty*, of the same firm, was with him on the brief for appellee Chris-Leef General Agency.

*David J. Morgan*, of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause and was on the brief for appellee Bud Hamm Insurance & Real Estate, Inc.

The opinion of the court was delivered by

ABBOTT, J.: The plaintiffs, Thomas Robert Vargas and Peoples National Bank (Bank), appeal from summary judgment granted in favor of Nautilus Insurance Company (Nautilus), Chris-Leef General Agency (Chris-Leef), and Bud Hamm Insurance & Real Estate, Inc., (Hamm). At issue is whether an insurance policy on a building and its contents was in force on the date the building and contents were destroyed by fire. Also at issue is the Bank's status under the policy.

Vargas owned Robert's Body Shop. The Bank had an insurable interest both in the building containing the body shop and in part of its contents. Vargas purchased an insurance policy from Nautilus in February 1987. The insurance policy was purchased through a local agent, Hamm. The policy was brokered through Chris-Leef. The Nautilus policy was obtained through a premium-financing agreement in which Premium Finance Specialists (PFS) paid the annual premium to Nautilus in exchange for a down payment and monthly payments from Vargas. Vargas failed to make timely payments and Chris-Leef sent a notice of cancellation to him. The cancellation was effective April 24, 1987.

The parties agree that Chris-Leef, on behalf of Nautilus, agreed to reinstate the policy without lapse if PFS received a check for the past-due premium by April 29, 1987. The defendants contend the agreement was that Vargas was to mail a check to PFS by April 27, 1987, which had to be received by PFS by April 29, 1987. Vargas filed an affidavit denying the agreement was that the check had to be mailed by April 27, 1987.

On the morning of April 29, 1987, the building and contents were destroyed by fire. With full knowledge that the premises and contents had been destroyed, Vargas took a check for the past-due premium to Hamm's office. On advice of Mr. Puckett of Hamm, Vargas wired the premium payment by Western Union so that it was received by PFS on April 29, 1987. The policy was then reinstated "effective 12:01 a.m., 4/24/87, with no lapse

in coverage." When Nautilus learned of the loss, it denied coverage.

Vargas and the Bank filed suit. The Bank alleged that it had an insurable interest in the building arising from the contract for sale between the Bank as seller and Vargas as buyer and that the Bank was a loss payee on the Nautilus policy.

All defendants filed answers. Nautilus asserted a cross-claim against Hamm. Discovery proceeded and motions for summary judgment were filed by each of the parties.

The trial court granted summary judgment and explained his judgment, in pertinent part, as follows:

"On the morning of April 29th, 1987, the plaintiff's 'Robert's Body Shop' was destroyed by fire, which was the insured premises. Subsequent to the fire, the plaintiff went to the defendant Hamm's office with a check for the past-due premiums. Upon the advice of Mr. Puckett of that agency, plaintiff wired the premium payment by Western Union so that it was received by Premium Financing Specialists, who was financing the policy, on April the 29th. The defendant Nautilus then reinstated the policy dated April the 24th, 1987. The reinstatement endorsement checked the phrase 'the policy is reinstated effective 12:01 a.m., 4-24-87, with no lapse in coverage.' This form had blanks allowing for reinstatement with a lapse between the cancellation date and the reinstatement date, and also another which was 'subject to the named insured's warranty that there have not been any claims between the cancellation date and "blank", being the date of the policy.'

"The plaintiff's contention is that by accepting the premium payment on the date previously agreed in issuing the reinstatement policy to the previous date, that the insurance company is bound by the express terms of the written instruments.

"The defendants contend that it was simply a case of one purchasing insurance while knowing that the insured premises were destroyed and concealing this fact from the insurer. The defendants rely on *Matlock v. Hollis*, 153 Kan. 227, which states that if an insured 'applies for insurance knowing that the building has already been destroyed by fire, conceals the fact of the prior loss and secures a policy antedated to cover the time of the loss, the policy is void and no liability ever attaches.'

"According to the court:

" 'While insurance contracts are not technically wagering contracts, an applicant for insurance stakes his premium payment on the chance that there will be a loss. By the same token, the insurance carrier takes a chance—the heavy odds being represented by the face of the policy as against the premium—that there will be no loss. If the applicant knows his house has already burned down, he is taking no chance, and the policy is not merely voidable, but is void. The implied condition, requisite to the contract, is absent. *Id.*'

"The Court finds that defendant Nautilus Insurance Company is correct in application of the law to the relevant undisputed facts recited herein, and adopts said defendant's briefs herein as this Court's findings and conclusions of law herein.

"Because the plaintiff's claim relies on its claim versus Nautilus, the remaining defendants' motions to dismiss are sustained. It is unnecessary under this conclusion of the case to determine the other issues raised as to agency, possible dual agency and choice of law questions."

As we view the trial court's reasoning, it held the property was destroyed prior to the policy being reinstated and, under Kansas law, the policy is void. The trial court then concluded that all of Vargas' claims (including the Bank's) were dependent upon his claim against Nautilus and granted summary judgment on the remaining defendants' motions.

We hold that the trial court erred in granting summary judgment for a number of reasons.

There is one clear unambiguous piece of evidence to show the agreement reached on reinstatement of the policy and that is the reinstatement endorsement itself. It contains three options for the insurer to check: reinstatement with no lapse, reinstatement with a lapse between the cancellation date and the reinstatement date, and reinstatement subject to the named insured's warranty that there have not been any claims during the lapse. The first option, reinstatement with no lapse, is checked and the policy was reinstated effective April 24, 1987.

The trial court relied, apparently, on *Matlock v. Hollis*, 153 Kan. 227, 109 P.2d 119 (1941), in holding that the fire was not covered. In *Matlock*, this court was presented with the question of whether an employee can recover compensation from a workers compensation insurance company for an injury received prior to the application of an antedated policy, with the fact of such injury having been fraudulently concealed by the employer when the application was made. This court held that a policy so obtained was void *ab initio* and could not confer upon the employee a right to recover because no insurance policy was in force when the injury occurred. 153 Kan. 227, Syl. ¶ 2.

*Matlock* presents a different issue. Here, a policy had been in force. It was cancelled. There was an offer by the company to reinstate the policy *with no lapse*. For the insurance company, reinstating with no lapse has obvious benefits: It does not have

to go to the expense of issuing a new policy and it gets the premiums during the lapse period. But, for "without lapse" to have meaning to the insured, it would have to mean that a loss during this time would be covered. Otherwise, the insurance carrier would collect a premium for a period for which it did not take a risk.

Nautilus argues that this issue has been decided before in other jurisdictions and cites as an example *Johnson v. Insurance Co.*, 119 Tenn. 598, 107 S.W. 688 (1907). In *Johnson*, the original insurance contract expressly denied coverage during any period when premiums were not paid. Based on this express language in the contract, the Tennessee Supreme Court held that the antedated reinstatement did not operate to cover a loss occurring when premiums were not paid up.

Here, the insurance policy (at least that part which is in the record), does not mention lapse and reinstatement. Further, there is in the present case a signed reinstatement endorsement stating that there is coverage during the lapse.

In *State Farm Mutual Automobile Ins. Co. v. Bockhorst*, 453 F.2d 533 (10th Cir. 1972), an insured had let his automobile insurance lapse and then had an accident. He informed his agent of this. The company accepted his check and retroactively reinstated the policy. The Circuit Court said that, although the insurer had the right to not retroactively reinstate the policy, it waived this right by doing so when it had been informed of the accident. The court distinguished *Matlock*, arguing that there was fraudulent concealment at issue there.

Here, the policy was valid when issued. The insured (Vargas) failed to pay the premium timely. Evidence is in the record that an agreement was reached that, if a payment was made by a certain date, the policy would be reinstated without lapse. If that alleged agreement and receipt of payment is proved to the satisfaction of the trier of facts, the policy would be in effect at the time of the loss.

The insurance carrier agreed to reinstate the policy without lapse, provided payment was made by a specified date. Thus, the insurance carrier agreed to accept any risk during the period of time between when the policy was cancelled and the date given to make the payment. At the time the insurer agreed to

accept the risk, the res actually existed. Had the res that was to be insured not existed when the insurer agreed to accept the risk and the insured been aware of that fact, the policy would have been void. But, where the insurer agrees to accept a risk for a premium to be paid on a future date, the insured is fully protected, provided the premium is paid before the deadline for payment.

The trial court erred in granting summary judgment to the defendants on this issue.

There is also a disputed factual issue as to whether the agreement required payment to be mailed prior to April 27, 1987. If so, a question arises as to whether that requirement is· material. If material, an issue remains as to whether the mailing requirement was waived when the money was received and the policy reinstated. The trial court will have to make this determination on remand. In addition, all of the original issues remain that are not specifically dealt with herein.

Hamm suggests that summary judgment in its favor should be affirmed because the trial court was correct in granting it summary judgment. The trial court did not grant summary judgment to Hamm on any grounds except on the issue we have this day reversed. Thus, the trial court must first be given an opportunity to pass on Hamm's motion for summary judgment before it will be considered by this court.

The remaining issue before us concerns the Bank. The trial court granted summary judgment for the defendants and against the Bank, finding that under the terms of the policy's mortgage clause, notice of cancellation must be sent to the mortgagee, but that the Bank was not listed as a mortgagee in the policy. The Bank was named as a loss payee.

The insurance policy itself names only Thomas Vargas as an insured. On the front page appears the following language: "Mortgage clause: Subject to the provisions of the mortgage clause attached hereto, loss, if any, on building items, shall be payable to: insert name(s) of mortgagee(s) and mailing address(es)." Nothing is listed in the space provided.

Several pages later is an endorsement entitled, "Loss Payable Clause." It provides: "Loss, if any, shall be adjusted with the

insured and shall be payable to the insured and People's National Bank, 300 N. Kansas Ave., Liberal, KS 67901."

Several pages after the endorsement, in the standard boilerplate policy provisions, is the mortgage clause referred to on the first page. It provides:

"Mortgage Clause . . . (Applies only to building items and is effective only when policy is made payable to a named mortgagee or trustee.)

"Loss or damage . . . shall be payable to the mortgagee . . . , named on the first page of this policy, as interest may appear . . . [and] shall not be invalidated by any act or neglect of the mortgagor or owner of the . . . property . . . provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy the mortgagee . . . shall, on demand pay the same.

. . . .

"This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee . . . for 10 days after notice to the mortgagee . . . of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement."

Under the terms of this language, if the Bank had been listed on the first page as a mortgagee, it would have had a right to notice of cancellation.

The Bank was not listed as a mortgagee, and the question arises whether being listed as a loss payee is sufficient to require notice.

In *Francher v. Carson-Campbell, Inc.*, 216 Kan. 141, 144, 530 P.2d 1225 (1975), this court held that a mortgage clause in an insurance policy creates a separate contract between the mortgagee and the insurer. See *Prather v. National Fire Ins. Co.*, 153 Kan. 477, 481, 112 P.2d 99 (1941). This is the majority, if not universal, rule. See 5 Couch on Insurance 2d § 29:65 (1984). And, if the insurer wants to cancel the policy, notice must be given to the mortgagee before cancellation of the policy. 6A Appleman, Insurance Law and Practice § 4182 (1972).

A loss payee clause is interpreted differently than a mortgage clause. A loss payee clause merely stipulates that proceeds from a policy will be payable to the named payee, but does not create a contract between the named payee and the insurer. The named payee must stand in the shoes of the insured and has no rights independent of the insured's rights. 5A Appleman, Insurance Law

and Practice § 3401 (1970); 5 Couch on Insurance 2d § 29:66. In *Elmore v. Royal Ins. Co.*, 154 Kan. 93, 97, 114 P.2d 786 (1941), this court said of a mortgagee named under a simple loss payable clause: "The mortgagee was not a party to the instant contract but was merely an appointee to receive the proceeds of the policy to the extent of its interest." Under the loss payable clause, the named payee is barred from recovery if the insured is barred. 5A Appleman at § 3401. By the express terms of mortgage clauses, a mortgagee is not barred.

In *Schleimer v. Empire Mut. Ins. Co.*, 71 Misc. 2d 1014, 337 N.Y.S.2d 872 (1972), *aff'd* 43 A.D.2d 825, 352 N.Y.S.2d 429 (1974), the court held that a party designated under a loss payable clause is not entitled to notification of cancellation because "[u]nder a limited loss payable clause the rule is that if the policy is not collectible by the insured, the appointee cannot recover." 71 Misc. 2d at 1015 (citing 5A *Appleman* at § 3335).

Because the Bank was not a named insured and because the Bank was named under a loss payable clause rather than a mortgage clause, the trial court's grant of summary judgment was correct (unless the Bank can show that the agent intended the Bank to be named as a mortgagee on the policy and it was the insurance carrier's, or its authorized agent's, fault it was not so named). The fact that Nautilus later sent notice of cancellation to the Bank is irrelevant.

As a result of our rulings herein, the remaining issues are moot.

Affirmed in part, reversed in part, and remanded.