(839 P.2d 64)

No. 67,443

RUSSELL S. WUNSCHEL and LOIS A. WUNSCHEL, *Appellants*, v. TRANSCONTINENTAL INSURANCE COMPANY, *Appellee*.

—

Opinion filed September 25, 1992.

*Bruce C. Harrington*, of Topeka, for the appellants.

*Paul Hasty, Jr.* and *F. Russell Peterson*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for the appellee.

Before DAVIS, P.J., LEWIS, J., and ROBERT C. HELSEL, District Judge Retired, assigned.

LEWIS, J.: Appellants, Russell S. and Lois A. Wunschel (Wunschels), appeal from the granting of summary judgment in favor

of Transcontinental Insurance Company (TIC). We reverse and remand.

Lois Wunschel was the owner of property located in Shawnee County and known as the Kaw Valley Country Inn (Inn). The Inn was leased to Robert N. Holmes by the Wunschels under a written lease agreement. This lease agreement, among other things, specifically required Holmes to maintain casualty insurance. In the event a casualty were to occur, Holmes was required to use the insurance proceeds to repair or rebuild the Inn. The Wunschels also contend that the lease required Holmes to list them as loss payees under any policy procured under the lease.

In satisfaction of the requirements of the lease, Holmes obtained the necessary fire, wind, and hail policy on the Inn from TIC. TIC issued the policy to Holmes as the insured. The policy contained a clause headed "Loss Payable Provisions." That clause of the policy covered the building and contents of the insured property and listed as the loss payee "Mr. & Mrs. Russell Wunschel, 805 N. Main, Carroll, IA 51401." One pertinent portion of the loss payable clause of the policy reads as follow:

"A. LOSS PAYABLE

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:
1. Adjust losses with you; and
2. *Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.*" (Emphasis added.)

In another section, the policy states:

"2. For Covered Property in which both you and a Loss Payee have an insurable interest:
a. *We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.*" (Emphasis added.)

The Inn was subsequently damaged in a storm. Holmes, as the insured, made a claim under the TIC policy for damage to the Inn, and TIC and Holmes agreed on the dollar value of the damage. Subsequently, TIC paid to Holmes alone the sum of $36,337.65. The insurance company's draft was not made jointly payable to Holmes and the Wunschels, and it is apparent that the Wunschels were completely ignored by TIC in the adjustment and payment of this loss despite being listed in the policy as loss payees.

The Wunschels claim that they had no knowledge that the Inn had been damaged by a storm and were not aware that Holmes had reported and been paid for the loss by TIC. The Wunschels further contend that Holmes did not use the money to repair the damage to the Inn but spent it on other personal obligations.

There is a conflict in the evidence about who knew what and when they knew it. Holmes testified that he notified Russell Wunschel of the damage and that an insurance check for $36,000 would be forthcoming. He also testified that he later notified Wunschel that his name was not on the insurance draft and that Russell Wunschel told him to deposit the draft in the Inn's account. On their part, the Wunschels deny that any of the conversations related by Holmes took place and testified that they did not even find out about the loss and the insurance payment until late 1988 or early 1989.

Holmes ultimately defaulted on the lease agreement with the Wunschels. On April 1, 1988, the Wunschels and Holmes entered into a contract designated an "Agreement," which replaced the earlier lease agreement. In the management agreement, the parties provided that for consideration "Wunschel will forgive all monies due and owing from Holmes, EXCEPT the real estate taxes for the period of time Holmes occupied the real estate." The agreement also provided: "The only debt from Holmes to Wunschel will be the unpaid real estate taxes for the twelve months Holmes occupied said property."

The Wunschels testified that, when they entered into the management agreement with Holmes, they did not know that the motel had been damaged by a storm and did not know that the insurance payment had been made to Holmes alone and that Holmes had failed to use that money to repair the premises. As a result, the Wunschels insist that they did not intend by that agreement to release Holmes from any obligation to repair the property or apply the insurance money to such repairs.

Ultimately, the Wunschels sued both Holmes and TIC. In their suit against Holmes, they alleged Holmes had breached a contractual obligation to either repair the storm damage or pay the insurance proceeds to them. For reasons which are not entirely clear, the Wunschels later dismissed the lawsuit against Holmes without prejudice.

The basis of the suit by the Wunschels against TIC was contractual. The Wunschels alleged that TIC breached its contractual obligation to pay the insurance proceeds to the loss payees, or to the loss payees and Holmes jointly, as provided by the policy.

TIC filed a motion for summary judgment against the Wunschels. The trial court sustained that motion, holding as follows: (a) The Wunschels had released Holmes from any claims they had against him for misappropriation of the insurance funds or for his failure to repair the Inn; (b) the Wunschels, as loss payees, could not sue TIC after releasing their claim against the insured; and (c) under *Vargas v. Nautilus Ins. Co.*, 248 Kan. 881, 811 P.2d 868 (1991), the Wunschels could not sue TIC for breach of contract because they had no contractual relationship or privity with TIC.

The Wunschels have appealed the granting of summary judgment to TIC.

## WAS SUMMARY JUDGMENT PROPER?

Rules which govern the propriety of the granting of a motion for summary judgment are well known and often stated:

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.] The party opposing summary judgment, however, has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case. [Citations omitted.] If factual issues do exist, they must be material to the case to preclude summary judgment. [Citation omitted.]" *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 306-07, 756 P.2d 416 (1988).

See *Jones v. Neuroscience Assocs., Inc.*, 250 Kan. 477, Syl. ¶ 1, 827 P.2d 51 (1992); *McGee v. Chalfant*, 248 Kan. 434, 437, 806 P.2d 980 (1991); *Hammig v. Ford*, 246 Kan. 70, 72, 785 P.2d 977 (1990).

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' [Citation omitted.] To defeat a properly supported motion for summary judgment, the nonmovant must come forward with 'specific facts showing that there

·is a genuine issue for trial.' [Citation omitted.]" *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, 762, 829 P.2d 907 (1992).

We have reviewed the trial court's grant of summary judgment in accordance with the standards set forth above. Among other things, we hold that material questions of fact remained undetermined and that summary judgment was improper.

The trial court held that the management agreement on April 11, 1988, released Holmes from all obligations flowing from the lease agreement or the insurance recovery. It then concluded that a loss payee could not release the insured and then sue the insurance company. The decision was based on the trial court's belief that the release effectively destroyed any subrogation rights of TIC. The trial court reasoned that it would not be proper to allow the Wunschels to recover from TIC if TIC were barred from taking action against its insured.

To the extent that the so-called release is relevant to the Wunschels' right to sue TIC, the trial court erred in granting summary judgment. The Wunschels insist that they could not have released Holmes from his obligation to repair or apply the insurance proceeds to the repair. They contend that, at the time they entered into the management contract, they did not know of the storm damage, the insurance payment, or of Holmes' misappropriation of that payment. Their testimony is that Holmes concealed and wrongfully withheld that information from them during the negotiations that led to the management agreement. Accordingly, they argue that the release language in the management agreement was obtained by fraud and concealment and cannot be considered to release an obligation which the Wunschels did not know existed.

It is true that Holmes testified that the Wunschels knew of the damage and knew about the insurance proceeds long before the parties signed the management agreement. It is this totally contradictory testimony which creates a material question of fact. If the Wunschels' testimony is believed, it could be held that the management agreement did not release Holmes. If Holmes' version is believed, an opposite conclusion can be reached. This is a material question of fact which is not resolvable on summary judgment. The trial court erred in granting summary judgment to TIC based upon the release theory set forth above. On remand,

the true nature and legal effect of the management agreement must be determined by the trier of fact.

## MAY THE WUNSCHELS SUE TIC FOR BREACH OF CONTRACT?

The principal issue we must resolve concerns the status of the Wunschels in their suit against TIC. The trial court held that the Wunschels cannot make a claim directly against TIC on the insurance contract. It cites a number of Kansas decisions as support, and holds that a loss payee has no contractual relationship with the insurance company and, without "privity of contract," cannot make a direct claim under the policy. The net result of this logic reduces the Wunschels to the status of a party whose only claim is derivative from, and totally dependent on, the claim of Holmes. It places the Wunschels in a position of having no claim at all if they released the insured. Under the facts shown, the law of this state does not require such a result.

TIC argues that, even though it paid out money contrary to the express terms of its own policy, it cannot, under these facts, suffer any consequences from the breach of its own policy terms. TIC argues that, under *Vargas* and other Kansas cases, the Wunschels, as loss payees, have no contractual relationship with it, no privity of contract with it, and cannot sue it for breach of contract. The net result of TIC's argument is that it may, with impunity, ignore the loss payable clause in its policy; it may ignore the loss payees, despite the express terms of its policy, and then claim it cannot be held responsible for its mistakes because the loss payees cannot sue it because they stand in the shoes of its insured. In essence, TIC seeks to use *Vargas* as a shield to protect it from the results of the breach of its own agreement. We hold that it cannot do so.

There is a long line of cases which hold that there is a clear difference between one who is named as a loss payee and one who is named in a standard or union mortgage clause of an insurance contract. In reading these cases, one must clearly keep in mind the issues which give rise to the decisions. If one does not do so, the language of these decisions can be given an overbroad construction. This is what TIC attempts to accomplish. The cases it relies on apply where the insurance company is

attempting to defend on the basis of fraud by the policyholder or nonpayment of premium, etc. In these cases, the insurance company is occupying the high ground. It has not breached its contract; it is taking the position that its insured has done something to cause the contract to become void. The issue, then, becomes whether the party named in the "Standard Mortgage Clause" of the insurance policy can recover, even though the insured cannot. It is the law of Kansas and most other states that the standard mortgage clause operates as a separate and distinct contract between the insurer and the mortgagee. See *Neises v. Solomon State Bank*, 236 Kan. 767, 778, 696 P.2d 372 (1985). As a result of this doctrine, the insurance company must pay the mortgagee even though the policy is void or voidable as to its insured. On the other hand, a party who is merely named as "loss payee" does not have a special status and is not considered to have a separate contract with the insurance company. Accordingly, if the policy is void as to the insured, the loss payee cannot recover. *Vargas v. Nautilus Ins. Co.*, 248 Kan. 881, Syl. ¶ 2. These cases hold that a loss payee has no contractual relationship with the insurance company. It is this language which TIC seizes upon to shield it from the consequences of a breaching of its own policy provisions.

TIC argues that *Vargas* is controlling and that the Wunschels have no contract relationship with it and cannot sue it if the insured is barred from suing it. We do not read *Vargas* in this light. *Vargas* is a case in which the insurance company was defending on the grounds that the policy was void because of fraud by its insured. The bank in *Vargas* was named as a loss payee and was not named in the standard mortgage clause. TIC relies on the following language in *Vargas*:

"A loss payee clause is interpreted differently than a mortgage clause. A loss payee clause merely stipulates that proceeds from a policy will be payable to the named payee, but does not create a contract between the named payee and the insurer. The named payee must stand in the shoes of the insured and has no rights independent of the insured's rights. The payee is barred from recovery if the insured is barred." 248 Kan. 881, Syl. ¶ 2.

The law, as quoted above from *Vargas*, represents another stream of case law in this area but does not control the issues

in the instant matter. The issues in *Vargas* are not similar to those now before this court. *Vargas* did not involve an effort by a loss payee to enforce the terms of an insurance contract. The Supreme Court clearly isolated the issue in *Vargas* as follows:

"The remaining issue before us concerns the Bank. The trial court granted summary judgment for the defendants and against the Bank, finding that under the terms of the policy's mortgage clause, notice of cancellation must be sent to the mortgagee, but that the Bank was not listed as a mortgagee in the policy. The Bank was named as a loss payee.

. . . .

"Under the terms of this language, if the Bank had been listed on the first page as a mortgagee, it would have had a right to notice of cancellation.

*"The Bank was not listed as a mortgagee, and the question arises whether being listed as a loss payee is sufficient to require notice."* (Emphasis added.) 248 Kan. at 886-87.

In order to resolve the issue, the Supreme Court applied the general rule and held that the Bank, as a loss payee only, had no right to notice of cancellation. This is all that *Vargas* stands for, and we decline to extend it beyond its facts.

In the research we have done, we have found no case, and none have been cited to us, in which the distinction between a loss payee and a standard mortgage clause payee has been used to protect an insurance company from breach of the terms of its own policy. We conclude the distinction cannot be employed for that purpose.

Under the pleadings and the facts shown, the Wunschels are seeking to sue TIC as third-party beneficiaries of the insurance agreement between Holmes and TIC. We hold that this is a viable and permissible theory and, on remand, the Wunschels should be permitted to develop their third-party beneficiary action against TIC. As third-party beneficiaries, the Wunschels argue that they have a right to sue on the contract in their own right, without regard to the status of the insured. We agree. As loss payees, if the policy was void as to Holmes, it would be void as to the Wunschels, but that is not an issue in this lawsuit.

Our conclusion that the Wunschels may proceed to enforce the insurance agreement as third-party beneficiaries is not at variance with *Vargas* but is in harmony with that decision. The Wunschels have no contractual relationship with TIC and no privity exists. That fact is no bar to their action as third-party beneficiaries:

"It is well established that a third person may, in his own right and name, enforce a promise made for his benefit *even though he is a stranger both to the contract and to the consideration*. This concept, originally an exception to the rule that no claim can be sued upon contractually unless it is a contract between the parties to the suit, has become so general and far-reaching in its consequences as to have ceased to be simply an exception, but is recognized as an affirmative rule, generally known as the third-party beneficiary doctrine, subject to certain limitations and exceptions." (Emphasis added.) 17A Am. Jur. 2d, Contracts § 435, pp. 458-59.

This theory is well recognized in Kansas:

". . . [T]here is no occasion to here write a thesis of the right of a third person to enforce a contract between other persons for his benefit. While it has not always been so the general rule, now well established in the United States, including our own jurisdiction, is that he may avail himself of such a contract when made for his benefit and maintain an action thereon notwithstanding he was a stranger thereto and paid no part of the consideration therefor or had no knowledge thereof and was not identified therein when it was made. For statements of the rule in other jurisdictions see 12 Am. Jur., Contracts, 825, § 277; 17 C.J.S., Contracts, 1121, § 519 (c); Restatement of Law, Contracts, §§ 133, 135, 139. For our latest decisions recognizing and applying such rule see *Holmes v. Kalbach*, 173 Kan. 736, 252 P.2d 603; *In re Estate of Hilliard*, 172 Kan. 552, 241 P.2d 729; *Cory v. Troth*, 170 Kan. 50, 223 P.2d 1008.

. . . .

"[P]rivity in the sense it was used prior to recognition of the present third party beneficiary doctrine *is no longer necessary in order for the beneficiary to maintain an action or recover on a contract intended for his benefit*." *Anderson v. Rexroad*, 175 Kan. 676, 680-81, 266 P.2d 320 (1954).

See *Cornwell v. Jespersen*, 238 Kan. 110, 708 P.2d 515 (1985); *French v. French*, 161 Kan. 327, 167 P.2d 305 (1946).

The authorities cited above clearly provide that the Wunschels may seek to enforce a contract made for their benefit by virtue of their position as loss payees of the insurance contract. There is no requirement of privity.

It appears from the record that the "Loss Payable Provisions" of the insurance policy were made for the benefit of the Wunschels. By naming the Wunschels as loss payees under the policy, Holmes was satisfying a duty imposed upon him by his lease with the Wunschels. To establish their right to sue as third-party beneficiaries, the Wunschels must prove that the insurance contract was for their benefit. It is not required that the contract be for the exclusive benefit of the third party; it may also benefit

the contracting parties. *Cornwell v. Jespersen*, 238 Kan. 110, Syl. ¶ 2. A loss payee under an insurance contract between two other parties clearly occupies the status of a third-party beneficiary of that insurance contract.

Although no Kansas decisions exactly in point have been provided to us, the concept of a loss payee suing on an insurance contract as a third-party beneficiary is not a novel one. In *Schlehuber v. Norfolk & Dedham Mutual Fire Ins. Co.*, 281 So. 2d 373 (Fla. Dist. App. 1973), the Florida Court of Appeals, in determining that the loss payee could enforce the insurance contract as a third-party beneficiary, stated:

"We conclude that the language of the mortgagee payment clause which was a part of that policy represents a promise by the insurance company to pay to the mortgagees the extent of their loss as their interests appear. This promise may be enforced by the appellant as a third party beneficiary even though he possessed no policy in his name." 281 So. 2d at 375.

In *Leasing Serv. Corp v. Am. Motor. Ins. Co.*, 496 So. 2d 847 (Fla. Dist. App. 1986), the Florida court stated:

"In holding that the owner could state a cause of action as a third party beneficiary, we aligned ourselves with the Third District Court of Appeal's decision in *Schlehuber v. Norfolk & Dedham Mutual Fire Insurance Co.*, 281 So.2d 373 (Fla.3d DCA), *cert. denied*, 288 So.2d 259 (Fla. 1973), *appeal after remand*, 327 So.2d 891 (Fla. 3d DCA 1976), which involved a similar situation. The case before us is stronger than either of the two aforementioned cases because here *the third party beneficiary is named in the insurance policy as the loss payee.* We hold that the policy is not void and that LSC has standing to sue for the proceeds as a third party beneficiary of the insurance policy." (Emphasis added.) 496 So. 2d at 849.

See *Community Bank of Homestead v. American States Ins. Co.*, 524 So. 2d 1154 (Fla. Dist. App. 1988); *Ran Invest., Inc. v. Ind. Ins. Co.*, 379 So. 2d 991 (Fla. Dist. App. 1980).

The owner of property bailed to another has been held to have a right of direct action against the bailee's theft insurer for loss of bailed property as a third-party beneficiary. This right has been recognized despite the fact that the bailor was not mentioned in the policy or listed in the policy as a loss payee. See *Cumis Ins. Soc., Inc. v. Republic Nat. Bank of Dallas*, 480 S.W.2d 762 (Tex. Civ. App. 1972); see generally Annot., 64 A.L.R.3d 1207 (bailor's right of action against bailee's theft insurer).

We hold that, under the facts shown, the Wunschels, as loss payees, may proceed directly against TIC for breach of the insurance contract as third-party beneficiaries of that contract.

We hold here only that the Wunschels may proceed directly against TIC as third-party beneficiaries. We leave the merits and ultimate outcome to be determined on remand. The Wunschels will be required to provide evidence that they fall within the third-party beneficiary rules stated above. If they do so, their suit against TIC will be quite independent of any rights or liabilities of Holmes. For instance, the mere fact that the insurance company erroneously paid the policy proceeds to Holmes in an apparent breach of its own loss payable clause is not an absolute defense to the action by the Wunschels as third-party beneficiaries to recover those same benefits. Neither does the success of such an action depend upon TIC's ability to subrogate and recover funds from Holmes. As third-party beneficiaries, the Wunschels have every right to recover damages for TIC's breach of the loss payable clause of the contract, and, as third-party beneficiaries, their rights are not derived from the insured.

On remand, the Wunschels will have the opportunity to prove their third-party claim against TIC, and TIC will have available to it such defenses as are allowed by law.

We perceive our result to be one which protects the right of persons named as loss payees in this state. Such individuals appear to have an absolute right to rely on an insurance company adhering to the terms of its own policy. The adoption of the theory advanced by TIC would effectively eliminate any right to rely on an insurance company to pay out proceeds pursuant to its own loss payable clause. That is not a result that, in law and justice, ought to be accepted.

Reversed and remanded for proceedings consistent with this opinion.