(856 P.2d 174)

No. 68,646

UNION STATE BANK, *Appellee*, v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY, *Appellant*.

Opinion filed June 25, 1993.

*Zackery E. Reynolds*, of Fort Scott, for appellant.

*Larry D. Nuss*, of Nuss & Farmer, of Fort Scott, for appellee.

*Anne L. Baker* and *Charles N. Henson*, of Davis, Wright, Unrein, Hummer & McCallister, of Topeka, for *amicus curiae* Kansas Bankers Association.

Before BRISCOE, C.J., LARSON, J., and DAVID J. KING, District Judge, assigned.

LARSON, J.: St. Paul Fire & Marine Insurance Company (St. Paul) appeals the trial court's grant of summary judgment in favor of Union State Bank (USB).

St. Paul contends the trial court erred by ruling that USB, which had a security interest in dental equipment, was entitled to payment under its insurance policy after the equipment was destroyed in a fire St. Paul alleged was wrongfully and intentionally caused by USB's borrower/St. Paul's insured.

In June of 1990, Charles W. Rogers, D.D.S., contacted Atkins Insurance Agency, Inc., of Fort Scott, Kansas, (Atkins) requesting insurance coverage. Atkins placed the coverage with St. Paul, which issued a Professional Office Package policy to Dr. Rogers describing the coverage in the following manner:

"Property Protection

| | Limit | Premium |
|---|---|---|
| Building         Inflation Protection 1% | 80,000 | $395.00 |
| Business Contents | 130,000 | $734.00 |

Optional Coverages

| Accounts Receivable          Limit: | 17,000 | $8.00 |
|---|---|---|

Additional Protected Persons included under General Liability Protection (see Additional Protected Persons section)"

At the time the insurance policy was issued, City State Bank of Ft. Scott (CSB) held a mortgage on the real property upon which Dr. Rogers' office building was located. USB had loaned Dr. Rogers $93,250 secured by the dental equipment placed in Dr. Rogers' office. Both lenders required Dr. Rogers to procure insurance to protect their security, and the policy provided in the coverage summary the following:

"ADDITIONAL PROTECTED PERSONS

TYPE:   Mortgage Holder, Assignment Holder, Receiver
NAME:   CITY STATE BANK
ADDR:   202 SCOTT
        FT. SCOTT                                    KS 66701

TYPE:   Mortgage Holder, Assignment Holder, Receiver
NAME:   UNION STATE BANK
ADDR:   204 SHERMAN
        UNIONTOWN                                    KS 66779"

The policy states it is written "in plain easy-to-understand English" and contains the following provisions regarding who will be paid for a loss and wording relating to a mortgage holder:

"Who We'll Pay For Loss

"We'll adjust any loss with you. However, if the Coverage Summary identifies a person or organization to receive payments for covered property, our payments will be made to you and the person or organization named, based on the financial interest each has in the covered property described in the Coverage Summary.

"If Your Building Is Mortgaged

"If the Coverage Summary identifies a mortgage holder, this section applies. We'll consider trustees to have the same rights and duties as mortgage holders.

"Rights and duties of mortgage holders. We'll make payments for losses to you and any mortgage holder based on the interest each has in the covered property.

"If we deny your claim because of your acts or because you haven't complied with the terms of this agreement, the mortgage holder will still have the right to receive loss payments if the mortgage holder:

pays any premium when due at our request when you fail to do so.
submits a 'Proof of Loss Statement' when you fail to do so.
notifies us when aware of any change in ownership, occupancy or risk.

"The same rules and conditions that apply to you will then apply to the mortgage holder."

"**Transfer of mortgage holder's right to us.** If we pay your mortgage holder for loss or damage that we claim isn't covered by this agreement the mortgage holder's rights to recover that amount from you will then belong to us. But that won't affect your mortgage holder's rights to recover the remaining amount of the mortgage debt from you.

"We also have the right to pay off the mortgage debt. If we do, we'll take over the mortgage holder's right to be repaid by you.

"**Cancellation notice to mortgage holder.** If we cancel this agreement, we'll mail or deliver a cancellation notice to your mortgage holder at least 30 days before coverage ends—10 days if we cancel for non-payment of premium.

"**Nonrenewal notice to mortgage holder.** If we don't renew this policy, we'll mail or deliver a nonrenewal notice to your mortgage holder at least 10 days before the expiration date of the policy."

The policy also contained the following endorsement:

"This endorsement changes your Commercial General Liability Protection.

"**How Coverage is Changed**

"The following is added to the Who is Protected Under This Agreement section. This change adds certain protected persons and limits their protection.

"**Mortgage holder, assignment holder, or receiver.** The person or organization shown in the Coverage Summary as a mortgage holder, assignment holder, or receiver is a protected person. But only for covered injury or damage that results from your ownership, maintenance or use of the premises described in the Coverage Summary.

"However, the mortgage holder, assignment holder, or receiver isn't a protected person for injury or damage that results from:
structural changes new construction, or demolition work; done by or for them."

USB received a copy of an insurance policy binder from Atkins showing Dr. Rogers had insurance coverage with St. Paul. The binder showed CSB and USB as "Mortgage Holder, Assignment Holder, Receiver."

On January 8, 1991, Dr. Rogers' building and dental equipment were damaged by fire. St. Paul has alleged Dr. Rogers started the fire and has denied payment to him.

St. Paul paid CSB for its interest in the building and real property. St. Paul denied USB's claim for payment under the policy, contending USB was an assignment holder rather than a mortgage holder. St. Paul asserted USB had only the rights of a loss payee and would be paid only if Dr. Rogers was paid, which St. Paul claimed it was not obligated to do.

USB sued Atkins and St. Paul, contending the language in the policy afforded it mortgagee coverage and, regardless of Dr. Rogers' conduct, St. Paul was bound by the designation given to USB in the policy and obligated to pay the claim. Cross summary judgment motions between USB and St. Paul were filed.

The trial court determined St. Paul was bound by its designation of USB in the insurance policy as a mortgage holder, which gave USB mortgagee coverage. USB was granted judgment against St. Paul for $97,004.80, plus interest and attorney fees. The claim against Atkins was stayed and a final judgment was entered under K.S.A. 1992 Supp. 60-254(b).

St. Paul appeals. We affirm.

### Scope of Review

There is no disagreement between the parties as to any material facts, and "[s]ummary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Citations omitted.]" *Patterson v. Brouhard*, 246 Kan. 700, 702-03, 792 P.2d 983 (1990).

The central issue is the trial court's construction of St. Paul's insurance policy. " 'The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court. [Citation omitted.] Whether an ambiguity exists in a written instrument is a question of law to be decided by the court.' " *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 15 Kan. App. 2d 153, 157, 804 P.2d 1012, rev. denied 248 Kan 997 (1991). See *Godfrey v. Chandley*, 248 Kan. 975, Syl. ¶ 1, 811 P.2d 1248 (1991).

The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the

language to mean. *Northern Assur. Co. of America v. Farm Bur. Mut. Ins. Co.*, 15 Kan. App. 2d 455, 463, 808 P.2d 911, *rev'd on other grounds* 249 Kan. 662, 822 P.2d 45 (1991). When contract provisions and terms are uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail. This principle is based upon the fact that an insurer prepares its own contract and thereby assumes the duty to make its meaning clear and define limitations in coverage in explicit terms. *Farm Bur. Mut. Ins. Co. v. Winters*, 248 Kan. 295, Syl. ¶¶ 1, 2, 806 P.2d 993 (1991).

In construing an insurance policy, we must follow well-established rules of construction set forth in *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741 (1987):

"To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. *Clark v. Prudential Ins. Co.*, 204 Kan. 487, 491, 464 P.2d 253 (1970).

"The language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties. Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail. Since the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so; otherwise, the policy will be liberally construed in favor of the insured. When an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made. *Goforth v. Franklin Life Ins. Co.*, 202 Kan. 413, 417, 449 P.2d 477 (1969)."

With this background, we turn to the issue for our determination.

*Is the holder of a security interest in personal property that is identified in an insurance policy as "mortgage holder, assignment holder, receiver" entitled to mortgagee protection by the mortgage clause of an insurance policy?*

More simply stated, if USB is found to be a mortgage holder it must be paid by St. Paul, and the trial court must be affirmed. If USB is found to be merely a loss payee, St. Paul is under no

obligation to make payment if it is not obligated to pay Dr. Rogers, and the trial court must be reversed.

Although the wording of insurance contracts and the endorsements thereto concerning the rights of mortgage holders has changed through the years, the rules relating to mortgage clauses were well summarized by Justice Wedell in *Elmore v. Royal Ins. Co.*, 154 Kan. 93, 96, 114 P.2d 786 (1941):

"[There is a] distinction made by courts between the effect of a simple 'loss-payable' or 'open' mortgage clause . . . and the more recent method of protecting mortgagees by attaching riders to the mortgagor's policies which are generally known as 'standard' or 'union' mortgage clauses and which among other things provide that 'the insurance, as to the interest of the mortgagee, shall not be invalidated by any act or neglect of the mortgagor or owner.' . . . [T]he overwhelming weight of authority sustains the proposition that under the simple 'loss-payable' or 'open' clause, if there is no other stipulation in regard to the interest of the mortgagee, the contract as to the mortgagee is merely collateral to the principal undertaking to pay the mortgagor, and that the mortgagee is simply an appointee of the fund."

More recently, Justice Abbott in *Vargas v. Nautilus Ins. Co.*, 248 Kan. 881, 887-88, 811 P.2d 868 (1991), noted the distinction between a mortgage clause and a loss payee clause:

"[A] mortgage clause in an insurance policy creates a separate contract between the mortgagee and the insurer. [Citation omitted.] . . .

"A loss payee clause is interpreted differently than a mortgage clause. A loss payee clause merely stipulates that proceeds from a policy will be payable to the named payee, but does not create a contract between the named payee and the insurer. The named payee must stand in the shoes of the insured and has no rights independent of the insured's rights. [Citations omitted.] . . . Under the loss payable clause, the named payee is barred from recovery if the insured is barred. [Citation omitted.] By the express terms of mortgage clauses, a mortgagee is not barred."

Our most recent decision in this area, *Wunschel v. Transcontinental Ins. Co.*, 17 Kan. App. 2d 457, 463, 839 P.2d 64 (1992), involved the liability of an insurance company for its failure to pay the proceeds in the manner required under the loss payable provisions of the policy, where Judge Lewis succinctly summarized the relevant law in the following manner:

"It is the law of Kansas and most other states that the standard mortgage clause operates as a separate and distinct contract between the insurer and the mortgagee. See *Neises v. Solomon State Bank*, 236 Kan. 767, 778, 696 P.2d 372 (1985). As a result of this doctrine, the insurance company must

pay the mortgagee even though the policy is void or voidable as to its insured. On the other hand, a party who is merely named as 'loss payee' does not have a special status and is not considered to have a separate contract with the insurance company. Accordingly, if the policy is void as to the insured, the loss payee cannot recover. *Vargas v. Nautilus Ins. Co.*, 248 Kan. 881, Syl. ¶ 2. These cases hold that a loss payee has no contractual relationship with the insurance company."

In our case, St. Paul requests we look at USB's factual status and harmonize that with the insurance policy provisions. St. Paul argues that it does not provide standard mortgage clause coverage to holders of security interests and had no intention of doing so here. It asks us to ignore its designation of USB as a "mortgage holder" and find that its inclusion of the term "assignment holder" in its designation of additional protected persons is the equivalent of a designation of "loss payee," with the resulting non-liability for payment.

St. Paul asks us to consider the insurance policy in its entirety and find the policy was designed to pay only the holder of a building mortgage when payment is otherwise denied because of the insured's actions. It argues that its listing of the additional protected parties as "mortgage holder, assignment holder, receiver" was not intended to mean the parties had identical interests. St. Paul claims that treating the three designations in the same manner renders the distinction between the policy's loss payable clause and the standard mortgage clause meaningless, thereby improperly creating surplusage in the insurance contract.

Finally, St. Paul argues the trial court erred in its conclusion of law that an average competent banker would assume coverage existed after receiving the summary sheet, because this was not set forth as an uncontroverted fact in USB's motion for summary judgment.

USB responds by arguing that although it is a lienholder in personal property it was not designated as a "loss payee" under the insurance policy. USB contends it was designated as a "mortgage holder" and is entitled to coverage under the standard mortgage clause of the insurance contract.

USB asserts the term "assignment holder" is simply a part of the phraseology defining a mortgagee. USB contends that in the context used by St. Paul the term "mortgage holder" refers to

the individual or entity named in the lien agreement, "assignment holder" refers to someone to whom the mortgage is assigned, and "receiver" means someone who is acting on behalf of the mortgagee.

The Kansas Bankers Association as *amicus curiae* predictably asks us to affirm the trial court. The KBA points out that the term "mortgage holder" is not defined in the insurance policy. It contends that Kansas law does not distinguish between mortgage holders of personal or real property on questions of insurance.

St. Paul's insurance policy does not directly define "mortgage holder," "assignment holder," or "receiver," but these terms are tangentially mentioned in the endorsement relating to Commercial General Liability Protection where it refers to the person or organization shown in the Coverage Summary so designated as a protected person. There appears to be no significance in this case from this reference in the policy. The policy does not define a protected person, and we are left with no policy definition of the designation St. Paul gave USB.

"A mortgage is an interest in land created by a written instrument providing security for the performance of a duty or the payment of a debt." Black's Law Dictionary 1009 (6th ed. 1990). An assignment is "[t]he act of transferring to another all or part of one's property, interest or rights." Black's Law Dictionary 119 (6th ed. 1990).

A receiver is "[a] person appointed by a court for the purpose of preserving property of a debtor." Black's Law Dictionary 1268 (6th ed. 1990). A holder is one who legally possesses something. Webster's II, New Revised University Dictionary 586 (1984).

From the logical extension of these definitions, the protected person named by St. Paul in the insurance policy would be the holder of a mortgage, the holder of an assignment, or the entity or person appointed to preserve property. Using those definitions, USB has been designated by St. Paul as one who holds a mortgage, one who holds an assignment of a mortgage, or, if the mortgage is in default, the entity which is attempting to preserve the secured property.

Kansas has recognized that a secured interest in personal property can be created by a chattel mortgage. See *Home Finance*

*Corporation v. Cox*, 190 Kan. 553, 376 P.2d 884 (1962). A chattel mortgage is defined as a "pre-Uniform Commercial Code security device whereby a security interest was taken by the mortgagee in personal property of the mortgagor." Black's Law Dictionary 237 (6th ed. 1990). This type of secured interest was not substantively changed by adoption of the Uniform Commercial Code in Kansas. The Kansas Comment to K.S.A. 84-9-102 states: "Perhaps the first rule of coverage is that form is irrelevant. There are no more distinctions based upon whether the transaction is a 'chattel mortgage,' a 'conditional sale,' or an 'assignment of accounts receivable.' There is only a unitary 'security interest,' although no penalty attaches to using the pre-UCC terminology."

Other courts have recognized that a standard mortgage clause covers the holder of a security interest in the contents of a building, *J.B. Kramer Grocery Co., Inc. v. Glens Falls Insurance Co.*, 497 F.2d 709 (8th Cir. 1974) (applying Arkansas law); *Aetna Life & Casualty Co. v. Charles S. Martin Dist. Co.*, 120 Ga. App. 133, 169 S.E.2d 695 (1969); and the holder of a security interest in an automobile, *Great American Ins. Co. v. Southwestern Finance Co.*, 297 P.2d 403 (Okla. 1956); *Don Chapman Motor Sales v. Nat. Sav. Ins.* 626 S.W.2d 592 (Tex. App. 1981).

But see *General Elec. Cr. C. v. Aetna Cas. & Surety Co.*, 437 Pa. 463, 474, 263 A.2d 448 (1970) (concluding a standard mortgage clause "relates only to insurance on real property or personal property so annexed to the real estate as to be bound by a mortgage on the real estate").

10A Couch on Insurance 2d § 42:718 (1982), makes the following statement: " 'Mortgagee' within the standard mortgage clause does not limit recovery to situations where the creditor is not strictly a mortgagee but the term refers to any party whose interest is to be covered." " 'Mortgagee' within the clause is only a way of identifying the interest coverage." 10A Couch on Insurance 2d § 42:722 (1982). Couch also recognizes that in some jurisdictions a standard mortgage clause relates to real estate and not to personalty, while in others, the standard mortgage clause has been applied to chattel mortgages. 10A Couch on Insurance 2d § 42:724 (1982).

We hold the term mortgage holder as used in St. Paul's policy is broad enough to encompass lienholders or holders of security interests in both real and personal property.

Although both parties have claimed that *Vargas v. Nautilus Ins. Co.* is dispositive, we find it to be only instructive and not determinative of this case. In *Vargas*, the insured purchased an insurance policy in which a bank was named as a loss payee. When Vargas failed to pay the required insurance premium, the policy was cancelled, with the notice sent to the insured but not the bank. After a fire destroyed the building and its contents, the bank's claim of coverage and right to receive the cancellation notice was denied because the bank was not listed as a mortgagee. This result is not in conflict with our decision herein.

*Wunschel v. Transcontinental Ins. Co.*, 17 Kan. App. 2d 457, is not determinative either. There, Transcontinental Insurance Company failed to make payment on a claim jointly to the insured and the Wunschels, who were listed as loss payees. When the Wunschels attempted to collect from the insurance company after being unable to do so from the insured, Transcontinental relied on *Vargas* to supports its contention that a loss payee had no contractual relationship with it and could not sue for breach of the insurance contract.

Our court held that the Wunschels were third-party beneficiaries of the insurance agreement, that *Vargas* stood only for the general rule that a loss payee has no right to notice of cancellation, and that *Vargas* could not be extended beyond its facts. 17 Kan. App. 2d at 464.

With no Kansas case precisely on point, we find our situation analogous to that faced by the Minnesota Court of Appeals in *Midwest Fed. Sav. v. West Bend Mut. Ins.*, 407 N.W.2d 690 (Minn. App. 1987). There, a mobile home was being purchased under a contract and security agreement. The insurance policy contained a standard mortgage clause running to a financial institution. After a loss occurred, the insurance company denied the owners' claim, alleging they started the fire, and contended the financial institution was merely a loss payee because it held only a lien on personal property. The Minnesota Court of Appeals rejected this contention, holding:

"Here, nothing suggests that the parties intended Midwest Federal to be a 'loss-payee,' either at the time the policy was issued or renewed. West Bend now urges this interpretation, which clearly would result in a forfeiture of the rights Midwest Federal believed it was securing. Rights and liabilities differ between a 'mortgagee' and a 'loss-payee,' and we do not mean to suggest otherwise. Under the unique facts of this case, however, we construe the insurance coverage as mortgage coverage." 407 N.W.2d at 695.

We hold there is no basis for St. Paul's requested finding that the term "assignment holder" really means "loss payee." Applying the plain ordinary meaning to the terms used by St. Paul, we hold that a mortgage holder refers to the holder of a lien or security interest, assignment holder refers to one to whom the lien or security interest has been assigned, and receiver refers to one in charge of or holding the property.

In our case we hold St. Paul to the designation it granted to USB. St. Paul could have designated USB as a loss payee, but it did not do so. Further, it gave USB the same mortgage holder designation as it gave to CSB, and we hold they are to be treated identically irrespective of the different nature of the security held.

We do note that the standard mortgage clause is captioned "If Your Building Is Mortgaged." However, a caption is not an insuring provision; it is merely a heading or a title which standing alone would be inoperative. See *Clark v. Prudential Ins. Co.*, 204 Kan. 487, 493, 464 P.2d 253 (1970). The caption does not prevent standard mortgage clause coverage of lienholders in personal property. The insuring provision states that if the Coverage Summary identifies a mortgage holder, the standard mortgage clause applies. See *Business Dev. Corp. of Ga. v. Hartford Fire Ins.*, 747 F.2d 628 (11th Cir. 1984).

A second and equally valid reason the trial court must be affirmed exists. There is no question the wording used by St. Paul in the insurance policy is ambiguous. This triggers the settled rule that an ambiguous provision is to be construed against the insurance company and in favor of finding coverage.

If St. Paul intended to limit mortgage coverage to the real property and define a mortgage holder to exclude holders of secured interests in personal property, it had the obligation to use clear and unambiguous language to do so.

We need not repeat here the well-settled Kansas law referred to previously when we discussed scope of review, but the "construction most favorable to the insured must prevail" and "the policy will be liberally construed in favor of the insured." *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659, 810 P.2d 283 (1991). When we construe the ambiguous provisions as we are required to do, we reach the same conclusion as did the trial court.

Finally, based on our scope of review, we deem the trial court's gratuitous statement in its holding that an average competent banker would assume coverage to have no effect on the decision reached, and, even if outside USB's summary judgment motion, it is immaterial to our decision herein.

USB has filed a request for allowance of attorney fees upon appeal which, in light of our ruling herein, is required under K.S.A. 40-908. See *State Farm Fire & Cas. Co. v. Liggett*, 236 Kan. 120, 130, 689 P.2d 1187 (1984).

The documentation submitted by USB includes services related to finalizing the trial court's journal entry of judgment which would not properly be considered appellate services. We hold the fair and reasonable fees to be allowed for USB's counsel legal services and expenses on appeal is $3,099.00.

Affirmed.